IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 25, 2007**

Charles R. Fulbruge III
Clerk

No. 06-31233

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FREDERICK C. TALBERT

Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, GARZA, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Government indicted Frederick Talbert on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that Talbert knowingly possessed two guns found in his vehicle the night he was arrested. A jury convicted him. On appeal, Talbert argues that the district court's jury charge was improper by allowing conviction even if the jurors were not unanimous as to which gun he knowingly possessed. Talbert also argues that the district court improperly ordered him to register as a sex offender under Louisiana law. Rejecting both contentions, we affirm.

I

Although we generally review claims that a court improperly instructed the jury for abuse of discretion, United States v. Correa-Ventura, 6 F.3d 1070, 1076 (5th Cir. 1993), Talbert's claim is that the instruction misstated an element of the crime, a claim we review de novo, United States v. Morales-Palacios, 369 F.3d 442, 445 (5th Cir. 2004).

This court has recognized that simultaneous possession of multiple firearms constitutes only one crime under § 922(g)(1). See United States v. Bullock, 615 F.2d 1082 (5th Cir. 1980); see also United States v. Verrecchia, 196 F.3d 294, 297-98 (1st Cir. 1999) (citing Bullock and other cases which so hold). Hence, the Government appropriately charged Talbert with only count of § 922(g)(1), alleging that he possessed two guns. Prior to trial, both the Government and Talbert suggested using the Fifth Circuit pattern jury instruction. On the day of trial, however, the Government suggested a new instruction entitled "No Need for Unanimity as to Firearm," citing the First Circuit's decision in Verrecchia. Talbert objected, but after analyzing Verrecchia and holding a hearing, the district court delivered to the jury a modified version of the Government's charge:

> It is not necessary for the government to prove that the defendant possessed both firearms. It is only necessary that you find that the government has proven beyond a reasonable doubt that the defendant possessed a firearm.

Talbert challenges this instruction on appeal, arguing that it improperly allowed conviction even if the jurors were not unanimous as to which gun he actually possessed. This is not just theoretical, he asserts, because defense witnesses at his trial testified that the two guns were left in the vehicle on separate occasions, one days or weeks before the arrest and the other on the day of arrest. Consequently, he asserts, jurors may have disagreed as to which gun he knowingly possessed.

At the outset, we note that the charge could reasonably be read as explaining that the Government need not prove that Talbert possessed both guns, but rather only one gun, while requiring unanimity as to the gun possessed. One reaches this reading from the requirement that the jury find Talbert possessed "a firearm," along with the general unanimity instruction that the court also gave. Of course, the charge could be read not to require such unanimity, as Talbert argues. In any event, the Government implicitly concedes that the instruction does not require such unanimity, arguing instead that such unanimity is not required. We address this contention.

We have not passed on this exact issue, but the First Circuit has. In Verrecchia, the court first noted that, in Richardson v. United States, 526 U.S. 813 (1999), the Supreme Court held that although jury members must agree on each "element" of a crime, they need not agree on the "underlying brute facts" that make up an element. Consequently, the First Circuit put it, "the crucial distinction is thus between a fact that is an element of a crime and one that is 'but the means' to the commission of an element." Verrecchia, 196 F.3d at 299. The court then followed the path outlined by Richardson for making that distinction, applying traditional techniques of statutory construction because the statute controls whether a fact is an element or merely a means. First, the court noted, the language of the statute requires only that the defendant possess "any firearm," hence "any firearm" seems like the element and a particular firearm merely the means. The general term "any firearm," it highlighted, contrasted sharply with the specific, technical language surrounding the types of people who are covered by § 922(g). Second, the court stated that nothing in the statutory structure or legislative history of § 922(g) indicates that Congress intended to link culpability to the nature or quantity of the firearms possessed; to the contrary, it recognized, § 922(g) focuses on the status of the possessor. Third, the court explained that its reading presented no potential unfairness of

3

the kind that the Supreme Court in Richardson noted would attend the government's reading in that case. Usually, the only issue under § 922(g)(1) is whether the defendant possessed a gun, so there is little risk that jurors will ignore underlying factual detail. Finally, the court noted that other courts, including this one, see Correa-Ventura, 6 F.3d at 1075-87, have held that unanimity on a particular firearm is not required for prosecutions under § 924(c) for carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a federal violent or drug trafficking crime.

The Sixth Circuit, the only other of our sister courts to have addressed this issue, expressly adopted the "careful analysis" of Verrecchia. United States v. DeJohn, 368 F.3d 533, 542 (6th Cir. 2004). We do the same.

II

Talbert also challenges the district court's imposition of a condition of supervised release. A district court has wide discretion in imposing conditions of supervised release, hence usually we review imposition of conditions for abuse of discretion. United States v. Coenen, 135 F.3d 938, 940 (5th Cir. 1998). Talbert did not object below, however, so we review only for plain error. United States v. Phipps, 319 F.3d 177, 192 (5th Cir. 2003).

At sentencing, the district court voiced concern about Talbert's lengthy and serious prior criminal history, particularly his two state convictions for sex-related offenses. The court asked Talbert if he had ever been required to register as a sex-offender under state law; Talbert replied that he did not know of such a thing. The court then stated:

> Well, there's a case – and I can't remember the case – where I ordered, as part of supervised release, that he register as a sex offender in accordance with state law. . . . And I'm leaving that issue open in this case because I don't want somebody to come back and say: Hey, you know, it's jeopardy. But I'm going to reserve to the probation department the right to order him to do that, depending on what happens to him in prison, because I'm going to

order, as part of his prison - I'll recommend, at least, as part of his prison, that he be given some kind of treatment, you know, as a sex offender, and also anger management again. Maybe that will help him stay out of jail.

The court eventually sentenced Talbert to 63 months' imprisonment, within the 51 to 63-month Guidelines range, followed by three years of supervised release. In its written sentence, the court included as a "Special Condition" of supervised release that Talbert "shall register as a sex offender under state law if required to do so." The court did not check the box, appearing in the list of mandatory conditions applicable to certain types of cases, directing that the defendant "shall register with the state sex offender registration agency in the state where the defendant resides . . . as directed by the probation officer," a mandatory condition if registration is required by the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 et seq, because the crime of conviction (here § 922(g)) was not a sex crime.

Given the court's written sentence and its oral statement that Talbert be directed to register as a sex offender "in accordance with state law," we read the condition to require only that Talbert register under the law of Louisiana, or any other state, if such state law requires. The Government implicitly concedes this in its brief. And it is axiomatic that a district court can include as a condition that the defendant obey the law. See United States v. Love, 431 F.3d 437, 483 n.20 (5th Cir. 2005); see also United States v. Rosario, 386 F.3d 166 (2d Cir. 2004) (rejecting defendant's contention that the condition that he register as a sex offender under state law "where applicable" violated the Tenth Amendment, and apparently assuming that "where applicable" meant as required under state law for previous conviction for sex offense). We do not address whether a court can order registration if registration is not required by state law.

Talbert also appears to complain that the court improperly "delegated" to the probation officer the determination of whether he is required to register

5

under state law, suggesting that the court itself should have made that determination. We find no error. Presumably whether Talbert is required to register under state law is a mechanical, straightforward question – one the court did not address merely for lack of definitive information about Talbert's prior sex-related convictions and state law. This, along with the fact that probation officers are often given wide discretion in enforcing conditions of supervised release – indeed, the United States Probation Office is a branch of the federal judiciary and "an investigatory and supervisory arm" of the sentencing court, see United States v. Davis, 151 F.3d 1304, 1306 (10th Cir. 1998) – lead us to find no error in with the discretion given here.

AFFIRMED.