IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2008

Charles R. Fulbruge III
Clerk

No. 06-41678

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE VICENTE JIMENEZ

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
Case No. 2:01-CR-00028

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Jose Vicente Jimenez ("Jimenez") challenges his five-year sentence upon revocation of his supervised release, which also included a requirement that Jimenez register as a sex offender. For the following reasons, the revocation sentence is AFFIRMED but the requirement to register as a sex offender is VACATED. The case is REMANDED to the district court for further proceedings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In 2001, Jimenez pled guilty to possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). He did not waive appellate or collateral review rights. The district court sentenced him to a term of five-years imprisonment followed by five years of supervised release.

Jimenez was released from custody and began his supervised release on June 4, 2004. On November 1, 2006, the district court issued a warrant for Jimenez's arrest based on a petition filed by Jimenez's probation officer alleging three violations of his supervised release conditions: (1) Jimenez violated the mandatory condition of supervision requiring him not to commit another federal, state, or local crime by committing (a) assault, (b) aggravated sexual assault, (c) indecency with a child, and (d) prohibited sexual conduct; (2) Jimenez illegally possessed and used a controlled substance; and (3) Jimenez did not support his dependents by failing to pay child support. At his revocation hearing, Jimenez pled "not true" to allegation (1), and "true" to allegations (2) and (3). The Government offered into evidence the police reports of the alleged offenses prepared by the investigating officers. Jimenez objected to the admission of the police reports as a violation of the Confrontation Clause. The district court overruled his objection and admitted the documents under seal. Defense counsel advised the court that the charge relating to the assault allegations (1)(a) had been dismissed.

The district court accepted Jimenez's plea of "true" to allegations (2) and (3) and found him in violation of the conditions of supervised release. The district court further noted that:

> [T]he Court considers the evidence before it and finds that he has violated all these other conditions of his supervised release term alleged in the petition for warrant or summons for an offender under supervision, and he's adjudged guilty of all these offenses.

After some discussion regarding Jimenez's violations, the district court imposed the statutory maximum of sixty months in prison after considering the factors under 18 U.S.C. § 3553(a). The district court also added, "[u]pon release from imprisonment, no further supervised release, and I'll require that [Jimenez] register as a sex offender upon his release from imprisonment with all of the state and national sex offender registries." The district court then stated, "[a]nd I will recommend that this sentence run concurrent with your state sentence that you might receive for these allegations." The PSR recommended a sentence of 30 months with a determination that Jimenez's statutory guidelines range was 24 to 30 months. The district court imposed the statutory maximum of sixty months.

Jimenez timely appeals and raises three issues: (A) whether the district court's five-year prison sentence upon revocation of Jimenez's supervised release was unreasonable and/or plainly unreasonable; (B) whether the district court abused its discretion when it ordered Jimenez to register as a sex offender after completing his term of imprisonment; and (C) whether the district court erred in failing to include in its written judgment a recommendation that Jimenez's sentence run concurrent to any future state sentence that might be imposed based on the allegations in the petition to revoke.

## II.

Jimenez first challenges the revocation sentence as unreasonable. "Prior to Booker, this court would uphold a sentence imposed 'after revocation of supervised release unless it [was] in violation of law or [was] plainly unreasonable.'" United States v. McKinney, 520 F.3d 425, 428 (5th Cir. 2008) (quoting United States v. Stiefel, 207 F.3d 256, 259 (5th Cir. 2000)). "In Booker, however, the Supreme Court excised § 3742(e) and directed appellate courts to review for unreasonableness." Id. "This court has declined to resolve which standard of review applies to revocation sentences after Booker; instead, this

court has reviewed revocation cases under (a) both the 'plainly unreasonable' and the Booker unreasonableness standards of review or (b) the more exacting Booker unreasonableness standard." Id. We again decline to resolve this issue; because Jimenez did not object to his revocation sentence, we therefore must review under a plain error standard of review. United States v. Jones, 484 F.3d 783, 792 (5th Cir. 2007) ("[B]ecause [defendant] made no objection to his revocation sentence in the district court, so it is subject only to plain error review on appeal."). "As such, his revocation sentence must be upheld unless we conclude that there is (1) error, (2) that is plain,(3) that affects substantial rights and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation and citation omitted).

## A.

First, Jimenez argues that because the district court did not provide any reasons for its upward departure, the sentence should be vacated and remanded. As justification for its upward departure, the district court only stated that "[t]he Court considers the[] factors under 18 U.S.C. § 3553(a) and concludes this sentence is within these – that I'm going to pronounce, satisfies them." An explanation must be provided if a district court issues a non-Guidelines sentence in the revocation sentencing setting. United States v. Smith, 417 F.3d 483, 490 & n.35 (5th Cir. 2005) (citing United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005)). Under Mares:

> when the judge elects to give a non-Guideline sentence, she should carefully articulate the reasons she concludes that the sentence she has selected is appropriate for that defendant. These reasons should be fact specific and include, for example, aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led the court to conclude that the sentence imposed was fair and reasonable. Such reasons are essential to permit this court to review the sentence for reasonableness as directed by Booker.

402 F.3d at 519. The district court in this case did not articulate any reasons for its departure from the recommended Guidelines range, and did not "enumerate the factors on which its sentence is based so the appellate court can conduct a reasonableness review." United States v. Reinhart, 442 F.3d 857, 863 (5th Cir. 2006). The district court in this case only identified the statutory provisions that guided its inquiry, but did not provide any fact-specific reasons for its upward departure to permit us to review his sentence for reasonableness. We find the error plain. However, in order to overcome plain error review, the error must also affect "substantial rights." We have upheld non-Guidelines sentences within the statutory maximum under plain error review, even if the district court fails to articulate specific reasons, as long as the "sentence imposed was supported by the record and not contrary to law." United States v. Izaguirre-Losoya, 219 F.3d 437, 441-42 (5th Cir. 2000). There is no allegation that the sentence imposed was contrary to law, because the sentence imposed was within the statutory maximum. See 18 U.S.C. § 3583(e)(3). The upward departure is also supported by the record. "The original sentence was the result of a downward departure from the applicable guideline range, a factor that can warrant an upward departure under the guidelines." United States v. Bennett, 194 F. App'x 203, 204 (5th Cir. Aug. 16, 2006) (citing U.S.S.G. § 7B1.4, comment. (n.4)) (unpublished). The district court also found the commission of five serious offenses: possession of controlled substance, assault, two counts of aggravated sexual assault of a child, indecency with a child, and prohibited sexual conduct. Cf. United States v. Mathena, 23 F.3d 87, 93-4 (5th Cir. 1994) (noting the wilful multiple violation of supervised release conditions justified revocation sentence within statutory maximum as reasonable). Moreover, the district court stated that it did consider all the relevant factors. See United States v. Weese, 199 F. App'x 394, 396 (5th Cir. Sept. 8, 2006) (unpublished). Based on this record, an upward departure within the statutory maximum is not reversible plain error.

B.

Next, Jimenez argues that the revocation sentence is substantively unreasonable, because it relies on hearsay evidence, namely police reports.[1] Parolees at revocation hearings generally have "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (emphasis added). However, this right to confront pertains only to the decision to revoke supervised release, which is not challenged on appeal, not revocation sentencing. See id. Jimenez conceded as "true" that he violated his supervised release by possessing controlled substances and by failing to pay child support. He also does not contend on appeal that the revocation of his sentence based on his alleged sexual misconduct charges was in error. Therefore, the district court's decision to revoke supervised release is not disputed as erroneous. See 18 U.S.C. § 3583 (g) (requiring revocation for possession of controlled substances). The only challenge pertains to the reasonableness of the revocation sentence itself. The right to confrontation is not extended to the sentencing context. See United States v. Beydoun, 469 F.3d 102, 108 (5th Cir. 2006). Therefore, because Jimenez does not challenge the decision to revoke his supervised release, but only his revocation sentence, the right to confrontation under Morrissey does not apply to this case.

We therefore only review Jimenez's challenge to his revocation sentence under plain error review. Evidence used in sentencing, while not bound by the rules of evidence applicable in trial, must have "sufficient indicia of reliability." See U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial,

---

[1] Police reports are generally excludable as hearsay. See United States v. Lopez-Moreno, 420 F.3d 420, 437 (5th Cir. 2005 ).

provided that the information has sufficient indicia of reliability to support its probable accuracy.") (emphasis added). Thus, Jimenez argues that the district court was plainly erroneous when it determined the police reports were reliable.

We have considered police reports reliable in the sentencing context. See United States v. Posada-Rios, 158 F.3d 832, 881 (5th Cir. 1998); Griffin v. Leonard, 821 F.2d 1124, 1126 (5th Cir. 1987). The Third Circuit recently addressed a similar factual situation in United States v. Leekins, 493 F.3d 143, 149-51 (3d Cir. 2007). In Leekins, the Third Circuit considered whether a police report was sufficiently reliable for the district court to use in its sentencing decision. Id. The Third Circuit noted that "a police report . . . is not inherently unreliable" but a court must "revert to the general principle that the facts upon which a judge bases a sentence must have sufficient indicia of reliability to support their probable accuracy." Id. at 149 (internal quotations and citations omitted). In Leekins, the Third Circuit found verbatim statements by the investigating police officers attached to the police report provided some indicia of the police reports' reliability. Id. at 150-51. The Third Circuit also relied on the defendant's own admissions and his counsel's statements at trial to corroborate the police report. Id. As another indicia of reliability, the Third Circuit considered the detailed nature of the investigative reports. Id. at 151 (citing Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003)). Based on these factors, the Third Circuit concluded the police reports were reliable. In this case, the defendant did not testify, but one victim attached a hand-written letter corroborating the sex offenses alleged in the police report. The victim of the assault also attached a statement describing the incident. Moreover, the reports were long and detailed. There is, therefore, some indicia of reliability; the error is therefore not plain. See United States v. Surasky, 974 F.2d 19, 21 (5th Cir. 1992) ("[T]his Court has stated repeatedly that 'plain error' is error so obvious that our failure to notice it would seriously affect the fairness, integrity, or

public reputation of the judicial proceedings and result in a miscarriage of justice. . . . Plain error is both obvious and substantial.") (internal quotations and citations omitted).

## C.

The defendant also alleges that the sentence is unreasonable because the sentence was twice the Guidelines range. This argument is without merit. The record reveals the district court considered the sentencing guidelines and identified numerous violations of the supervised release conditions. Jimenez's challenge only pertains to the reasonableness of the sentence and does not allege the sentence was in error. It is therefore not plainly erroneous for the sentencing court to impose the statutory maximum sentence. See Jones, 484 F.3d at 793; see also United States v. Parker, No. 07-60381, 2007 WL 4354543, at *1 (5th Cir. Dec. 11, 2007) (unpublished).

## III.

Jimenez's second challenge is against the district court's requirement that the defendant register as a "sex offender" at both the state and federal levels after he completes his imprisonment term. The defendant has never been convicted of a sex offense. We usually review the imposition of post-imprisonment conditions, or supervised release conditions, for an abuse of discretion. United States v. Talbert, 501 F.3d 449, 452 (5th Cir. 2007). However, since the defendant did not object below, we review for plain error. Id. In Talbert, we left open the question whether a district court can order a defendant to register as a "sex offender" if it is not required by law. Id. As with Talbert, the requirement to register as a sex offender here is attached to a non-sex offense crime. Id. Sex offender registration is therefore not mandatory. Id. As such, the registration requirement must be considered a "special condition" of supervised release governed by 18 U.S.C. § 3583(d). Id.

The "district court has wide discretion in imposing conditions of supervised release." United States v. Paul, 274 F.3d 155, 164 (5th Cir. 2001). At the same time, the court's discretion in imposing special conditions is limited by 18 U.S.C. § 3583(d). Id. Under 18 U.S.C. § 3583(d), special conditions of supervised release must be "reasonably related" to four factors: "(1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' (2) the need 'to afford adequate deterrence to criminal conduct,' (3) the need 'to protect the public from further crimes of the defendant,' and (4) the need 'to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner.'" 18 U.S.C. §§ 3583(d), 3553(a)(1), 3553(a)(2)(B), (a)(2)(C). Every circuit court reaching the issue interpret section 3583(d) only to require a reasonable relationship with any of the four factors not necessarily all of them. See United States v. Johnson, 998 F.2d 696, 697-98 (9th Cir. 1993); United States v. Sicher, 239 F.3d 289, 291 (3d Cir. 2000); United States v. Kent, 209 F.3d 1073, 1076 n.3 (8th Cir. 2000); United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000); United States v. Brown, 235 F.3d 2, 7 (1st Cir. 2000); United States v. Sines, 303 F.3d 793, 800 & n.4 (7th Cir. 2002); United States v. Barajas, 331 F.3d 1141, 1146 (10th Cir. 2003); United States v. Brown, 402 F.3d 133, 137 (2d Cir. 2005) ("Despite the use of the conjunctive in the Guidelines, a condition may be imposed if it is reasonably related to any one or more of the specified factors.") (internal quotation and citation omitted). We have implicitly accepted the unanimous conclusion of our sister circuits. See United States v. Love, 431 F.3d 477, 484 (5th Cir. 2005) (noting that a special condition only has to be "related to a punitive goal" (emphasis added) out of four goals set forth in the statute). Under section 3583(d), even if a condition is related to one of these four "punitive goals," the condition can "involve [ ] no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervised

release, and it must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d).

The imposition of a sex offender registration requirement has no reasonable relationship with the defendant's underlying convicted crime, i.e., the distribution of marijuana, nor his criminal history, i.e., he has never been charged with a sex-related offense. The registration requirement also does not provide any treatment or training. Therefore, the imposition of the sex offender registration requirement must be related to the punitive goals of deterrence or public safety. See, e.g., United States v. Prochner, 417 F.3d 54, 64 (1st Cir. 2005). The question then is whether there is sufficient evidence that establishes a reasonable relationship between the registration requirement and the punitive goals of deterrence or public safety.

In most of these cases, courts upheld sex offender registration requirements because the defendant was previously convicted of a sex offense even if the underlying federal offense was not sex-related. See Talbert, 501 F.3d at 452; see also United States v. Dupes, 513 F.3d 338, 343-44 (2d Cir. 2008); United States v. Rosario, 386 F.3d 166 (2d Cir. 2004); United States v. Peterson, 248 F.3d 79, 84-86 (2d Cir. 2001). In other words, a previous conviction could be sufficient evidence of a reasonable relationship between sex offender registration and the punitive goals of deterrence or public safety. However, here, the defendant does not have any past convictions for sex-related offenses. Nevertheless, the lack of a sex offense conviction does not end our inquiry. Nothing in the statute prohibits the imposition of sex offense conditions for offenders who have no history of sex-related convictions. See United States v. Prochner, 417 F.3d 54, 63 (1st Cir. 2005) ("Nothing contained in the statute . . . limits the condition of sex offender treatment just to individuals convicted of sex offenses.").

There must then be some other evidence that establishes a reasonable relationship between the condition and a punitive goal. Many of our sister courts have vacated supervised release conditions that impose sex-offense related conditions, such as sex offender registration, if the underlying conviction was not sex related and there is little evidence that suggests a propensity to commit a sex-related offense in the future. See, e.g., United States v. Scott, 270 F.3d 632, 636 (8th Cir. 2001) ("The government presented no evidence that Scott has a propensity to commit any future sexual offenses, or that Scott has repeated this behavior in any way since his 1986 conviction.") (reviewing under an abuse of discretion standard); see also United States v. T.M., 330 F.3d 1235, 1237, 1240 (9th Cir. 2003) ("In summary, T.M.'s twenty-year-old conviction and forty-year-old dismissed [sex offense] charge[s], along with his subsequent probation violations and therapeutic evaluations, even considered cumulatively, do not establish a reasonable relationship between his sexually-related conditions of supervised release and either deterrence, public safety, or rehabilitation. In imposing those conditions, the district court abused its discretion.") (reviewing under an abuse of discretion standard). In United States v. Carter, 463 F.3d 526, 532-33 (6th Cir. 2006), the Sixth Circuit, under an abuse of discretion standard, found a stalking conviction, which included an obscene phone call, was "insufficient to establish that Carter committed a recent sex offense," and therefore did not justify a sex offense special condition even if the government alleges "sexual overtones" to the convicted offense.

In two other cases, under plain error review, a sister Circuit has upheld sex offender conditions, because there was sufficient evidence of a propensity to commit a sex offense. In Prochner, under plain error review, the First Circuit upheld a supervised release condition that the defendant undergo evaluation for possible sex offender treatment despite the defendant never having a conviction for a sex-related offense. 417 F.3d at 63-64. The First Circuit found that the

11

record evidence supported such a condition, relying on the fact that defendant worked at the YMCA, was in constant contact with adolescent males, had journal entries that evinced a desire to engage in sexual relationships with adolescent males, and evaluations rendered by a mental health worker and clinical social worker suggested the defendant had a potential problem with adolescent males. Id. In approving the sex offender condition, the First Circuit emphasized the fact that the sex offender condition was upheld because it did not require the defendant to register as a sex offender thereby distinguishing Prochner from Scott and T.M. Id. at 64 & n.7 ("[I]n Scott and T.M., unlike here, the special conditions included the stigmatizing condition that the defendant register as a sex offender."). Implicitly, the First Circuit considered sex offender registration as a more serious deprivation of liberty than a requirement to undergo sex offender evaluation and treatment. See id. Similarly, the Seventh Circuit in United States v. Ross, under plain error review and citing Prochner, upheld a condition for sex offender treatment, because the record contained evidence that the defendant fantasized about crimes against children. 475 F.3d 871, 875-76 (7th Cir. 2007).

In each of these cases, when the court determined whether to attach sex offender-related restrictions onto a conviction unrelated to sex, the court examined the record evidence to see if there was sufficient evidence of a propensity for a future sex offense that requires deterrence or can be considered a threat to public safety. See, e.g., Scott, 270 F.3d at 636; see also Coleman v. Dretke, 395 F.3d 216, 225 (5th Cir. 2004) ("Coleman I") ("[Texas] may condition Coleman's parole on sex offender registration and therapy only if he is determined to constitute a threat to society by reason of his lack of sexual control. Absent a conviction of a sex offense, the Department must afford him an appropriate hearing and find that he possesses this offensive characteristic before imposing such conditions. This court was told at oral argument that

evidence of Coleman's lack of sexual control exists. None appears in the record, however, and no contention is made that Coleman has been afforded a hearing meeting the requirements of due process."). The only evidence arguably related to a propensity to commit a sex offense consists of three allegations from three young victims contained in investigative police reports. These unsubstantiated allegations do not establish any propensity to commit these acts in the future and therefore do not establish a reasonable relationship to the need for deterrence or a threat to the public. In Prochner, the court upheld a sex offender-related condition based on a recent accusation of a sex offense that did not arise to a conviction. See 417 F.3d at 64 n.7. However, unlike this case, the sentencing court in Prochner also had "evaluations by a mental health expert and a licensed clinical social worker in the last three years." Id. Such additional evidence in Prochner (not found in this case) establishes a history and a propensity to commit such acts that contextualizes and substantiates the otherwise unsubstantiated accusations. No evidence in this case substantiates the accusations so as to support a finding as to the defendant's propensity to commit sex offenses in the future.[2] The error is plain.

Moreover, the error affects substantial rights. The evaluations by experts in Prochner and the accusation of a sex offense supported a finding that there was a potential mental health problem, and provided sufficient evidence to support the supervised release condition -- sex offender treatment -- as reasonably related to the punitive goal of providing the defendant medical care and correctional treatment. The evidence presented here -- allegations of a sex

---

[2] The question presented in section II.B concerns the admissibility of the police reports as proper evidence that the judge could reasonably use in a sentencing decision. In section III, we agree that the police reports are admissible evidence; however, we conclude that this evidence is not sufficient to support a finding of a propensity to commit sex offenses in the future and thereby fails to establish a reasonable relationship between the special condition and a punitive goal.

offense -- may possibly, per Prochner, support a sex offender evaluation and possible treatment in order to provide the defendant medical diagnosis and care; however, the evidence, as its stands now, cannot support the imposition of a sex offender registration requirement, a significantly more serious deprivation of liberty, as reasonably necessary for deterrence or for public safety reasons. In other words, the more serious restriction on liberty in this case could have been more limited -- for example, a sex offender evaluation may be first ordered before the imposition of sex offender treatment and, then, registration. See Prochner, 417 F.3d at 64 & n.7 (considering sex offender evaluation and possible treatment less stigmatizing than sex offender registration requirement). Courts are in agreement that imposing a sex offender registration requirement and treatment affects a substantial right, because it compels a serious deprivation of liberty and creates stigmatizing consequences. See, e.g., Coleman v. Dretke, 409 F.3d 665, 668 (5th Cir. 2005) ("Coleman II"); Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender."). While we modify the revocation sentence to excise the requirement to register as a sex offender, we leave open the possibility that the district court may impose a less restrictive condition after proper proceedings on remand, such as a sex offender evaluation as a precursor to possible future sex offender treatment and registration. Cf. United States v. Warden, 291 F.3d 363, 364 (5th Cir. 2002) (applying such a supervised release condition); United States v. Penny, 215 F. App'x 336, 337 (5th Cir. Jan. 30, 2007) (unpublished) (noting that the imposition of sex offender-related conditions, but not sex offender registration, after finding defendant committed a sex offense based on the record, was reasonably related to punitive goals under 18 U.S.C. § 3553). We consider the failure to contemplate this obvious approach before imposing the serious stigma of sex-offender registration with insufficient evidence of a propensity to commit sex offenses is

unfair. For these reasons, we find plain error in the district court's imposition of a sex offender registration requirement in this case.

For these reasons, we now VACATE the requirement that Jimenez must register as a sex offender.

## IV.

In the district court's oral statements during the sentencing hearing, the district court clearly recommends Jimenez's sentence should run concurrently with any yet-to-be imposed state sentence that he may receive based on his supervised release violations. The district court has this authority. See United States v. Brown, 920 F.2d 1212, 1217 (5th Cir. 1991), abrogated on other grounds, United States v. Candia, 454 F.3d 468, 472-73 (5th Cir. 2006); see also United States v. Quintana-Gomez, --- F.3d ----, 2008 WL 763368 (5th Cir. Mar. 25, 2008). However, the district court did not include this recommendation in its written judgment. United States v. Del Barrio, 427 F.3d 280, 284 (5th Cir. 2005) ("[O]ur case law holds that when there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls."). Whether we characterize the difference between the written and oral pronouncements as in conflict or as creating an ambiguity, it is clear from the record that the district court intended Jimenez's sentence to run concurrently with any yet-to-be imposed state violations. Warden, 291 F.3d at 365. We will now remand the revocation sentence so the district court can conform its written order with its controlling oral pronouncement. See United States v. Wheeler, 322 F.3d 823, 828 (5th Cir. 2003).

## V.

Jimenez's revocation sentence is AFFIRMED but we VACATE the requirement that Jimenez must register as a sex offender. The entire revocation sentence is REMANDED for further proceedings consistent with this opinion.